[Civ. No. 4935.    Fourth Dist.    Apr. 11, 1955.]

CLAUDE F. CASIDA, Plaintiff and Appellant, v. HOLLIS B. ROBERTS, Defendant and Appellant.

Morris B. Chain and William E. Swiney for Plaintiff and Appellant.

Baker, Palmer & Wall and Baker, Palmer, Wall & Raymond for Defendant and Appellant.

MUSSELL, J. — This is an action for dissolution of a partnership, an accounting, and for damages.    A jury returned a special verdict that "Hollis B. Roberts and Claude F. Casida became partners to mine, extract and sell gypsum and share the profits equaly."    It was stipulated by the parties "That the intention of the said verdict was to refer solely to the extraction, mining and selling of gypsum from deposits situated on Section 13, Township 26, Range 20 East, M.D.B. & M., Kern County, California."    Judgment was entered in accordance with the verdict of the jury and counsel for the respective parties stipulated that the accounting features of the case be heard at a later date by the court. After the trial of the accounting issues by the same judge who presided at the jury trial, judgment was rendered on May

19, 1954, in favor of plaintiff and against the defendant for
$21,004.55, plus interest and costs.

Defendant appeals from the judgment entered on the
verdict of October 19, 1953, and also from the judgment
entered on May 19, 1954, on the trial of the accounting issues.
Plaintiff appeals from the May 19, 1954, judgment only.

At the jury trial plaintiff Casida testified that he had
been connected with gypsum mining operations for several
years; that he had known defendant Roberts for about fifteen
years and that Roberts was engaged in the business of farm-
ing; that early in February, 1952, he, Casida, heard of a
government lease that might be available in the Lost Hills
area in respect to gypsum deposits; that on February 6, 1952,
he talked to Roberts about this lease and told him that it
would be necessary to put up a $2,000 deposit on the bid
for a government lease on land in Section 33, Township 25
South, Range 20 East, M.D.B. & M., Kern County; that on
said date he and Roberts discussed the Associated Oil prop-
erty situated on Section 13 in Township 26 South, Range 20
East, M.D.B. & M., and Roberts agreed ''to go in as partners
with me on a fifty-fifty basis'' if they could get the Asso-
ciated Oil property; that he told Roberts he could get $1,000
from a Mr. Vrba and Roberts said ''You know the work,
and you have been in the business, and we will put up the
money, and you do the work''; that he obtained $1,000 from
Vrba and a like amount from Roberts and went to Sacra-
mento with a cashier's check for $2,000 where he put in a
bid for a lease on the government property in said Section
33; that the bid was not accepted; that he and Roberts dis-
cussed the matter of obtaining a lease on Section 13 with a
Mr. Sanders, manager of real estate and right of way for
the Tide Water Associated Oil Company; that Sanders told
them he was sure that they could get a lease; that equipment
was delivered to the mine on Section 13 on February 15,
1952, and he, Casida, directed the operation of removing
the ''overburden'' of earth over the gypsum deposit; that
under his direction the mining operations on Section 13
commenced on February 15, 1952, and continued 24 hours
a day until February 20, 1952, when Roberts came out to the
mine and told him that ''he was all finished'' and to get
off the property; that he then left the property and conducted
no further operations thereon.

Casida further testified that the application to the State
Agricultural Department for state licenses to ship and sell

gypsum were first signed by Roberts and Casida as partners but that Roberts had these licenses canceled and others issued in his name only; that Roberts also obtained the lease of the property in Section 13 in his own name and that the lease was dated February 12, 1952, and was for a period of one year.

Roberts testified that he had no conversation with Casida concerning the formation of a partnership on a 50-50 basis, or otherwise; that he discussed the operation of a mine on Section 13 with Casida; that he made a deal with him to pay him $300 per month "and if we make a net profit, he was to get five per cent" and that that was the understanding under which Casida worked for him from February 15, 1952, until February 20, 1952.

There was a conflict in the evidence as to the existence of a partnership between plaintiff and defendant and the jury in a special verdict found that "Hollis B. Roberts and Claude F. Casida became partners to mine, extract and sell gypsum and share the profits equally." This finding is supported by substantial evidence and cannot be here disturbed. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].) Defendant Roberts in his appeal from the judgment based on this verdict contends that the jury was not permitted to find what period was involved in the partnership, and whether the parties became partners to mine, extract and sell gypsum from property other than said Section 13. The evidence is that no time limit was established by the parties as to the partnership existence. The trial court found that defendant from and after February 20, 1952, operated the entire partnership business as his own and mined, extracted, sold and used the gypsum taken from the property of the partnership; "that plaintiff is entitled to an accounting and settlement of the partnership affairs; that the partnership was dissolved by the wrongful exclusion of plaintiff on February 20, 1952, from the business; and that the partnership was not terminated nor its affairs wound up or settled as between the parties at any time after February 20, 1952, or to and including the date of trial." These findings are substantially supported by the evidence.

It was stipulated by the parties that the jury found as a fact that the parties became partners to mine, extract and sell gypsum and share the profits equally and that the intention of said verdict was to refer solely to the extraction,

mining and selling of gypsum from deposits situated on said Section 13.

Roberts further contends that there is substantial evidence that Vrba was a partner and that the jury should have been instructed as to his status. However, the lease in which Vrba was interested and in connection with which he advanced the sum of $1,000 was never executed. The bid was not accepted and Vrba never claimed an interest in the partnership. The evidence would not support a finding that he was interested in or a party to the mining and extraction of gypsum from Section 13. We conclude that the judgment on the verdict dated October 19, 1953, is supported by the record and we find no prejudicial error in the instructions given to the jury.

Both parties appeal from the judgment dated May 19, 1954, and rendered by the court in the accounting proceedings. Appellant Casida contends that the court erred in allowing defendant Roberts $10,000 as depreciation on his machinery and equipment used in the mining operations conducted on Section 13 and further contends that the profits of all sections leased for gypsum by defendant Roberts should have been included in the profits of the partnership because all sections were operated as one business, using the same machines, labor, books and management. Appellant Roberts contends that the trial court erred in substituting the $10,000 as depreciation allowance for the reasonable rental value of his machinery and equipment; that the said reasonable rental value amounted to the sum of $58,993.50; that if said sum had been allowed, the partnership would have shown a loss rather than a profit.

The record shows that after Roberts excluded plaintiff from Section 13 on February 20, 1952, the mining operations thereon were conducted exclusively by Roberts and his employees and the machinery and equipment used in these operations were owned and maintained by Roberts. The record further shows that Roberts, as an individual and not on behalf of the partnership, during 1952 and 1953 leased from the Tide Water Associated Oil Company portions of other sections near said Section 13 and conducted gypsum mining operations thereon. The court found that an auditor's report dated August 12, 1952, prepared by an auditor employed by Roberts, shows that a net profit from the operation of all of these gypsum properties to July 31, 1953, amounted to the sum of $88,480.48. The court further found

that the report failed to charge defendant for gypsum taken by him for his own use and that the sum of $88,480.48 should be charged to defendant for such gypsum; that the true profit from all operations by defendant was the sum of $168,599.88; that dividing this profit by 212,809.46 tons produced resulted in a net profit of 78 cents per ton; that the total tons mined, sold, taken and removed from Section 13 was 68,601.42 tons; that the net profit attributable to Section 13 was therefore 68,601.42 x 78 cents or $53,509.10. The court then found that all machinery and equipment used in the mining operations, other than that for which rent was paid directly to commercial lessors, was the sole property of the defendant and not the property or asset of the partnership; that defendant is entitled to an allowance for use of such machinery and equipment; that the value of defendant's machinery and equipment used in the mining operations was $200,000; that an additional charge of 5 per cent thereof, or $10,000, should be allowed as a deduction from the net profit attributable to Section 13; that adjusted accordingly, the final net profit attributable to Section 13 is $53,509.10, less a $10,000 depreciation, or a final profit attributable to Section 13 of $43,509.10; that plaintiff's share thereof was $21,754.55.

Evidence was introduced showing that the reasonable rental value of the machinery and equipment used in mining gypsum on Section 13 to and including April 24, 1952, was the sum of $58,993.50. While the court found that defendant was entitled to an allowance for the use of his machinery and equipment, it failed to determine the reasonable rental value thereof and the amount to be allowed therefor. This we conclude was error. If Roberts had rented other equipment to conduct the mining operation it seems quite clear he would have been allowed this expense and since he furnished his own equipment, the reasonable rental value thereof should have been ascertained by the court and allowed as an expense to the defendant. Moreover, it does not appear from the record that definite evidence could not be produced with respect to the production and expense in connection with the operations on Section 13, segregated from the other operations, which would more accurately disclose the factual situation with respect to the partnership. The entire accounting issue with respect to Section 13 should be retried.

The judgment dated October 19, 1953, and entered on the verdict of the jury is affirmed and the judgment dated

May 19, 1954, in the trial of the accounting issue is reversed. Each party to bear his own costs.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied May 5, 1955, and plaintiff and appellant's petition for a hearing by the Supreme Court was denied June 8, 1955.